IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| TWC CONCRETE, LLC, | : | Case No. 1:23-cv-345 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| ANTHONY DECARLO, JR., *et al.*, | : | |
| | : | |
| Defendants. | : | |

ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER AND
ISSUING A TEMPORARY RESTRAINING ORDER

This case is before the Court on Plaintiff's Motion for a Temporary Restraining Order (Doc. 2).[1] The motion is fully briefed and ripe for review. For the reasons explained below, the Court **GRANTS** Plaintiff's Motion and **ISSUES** a temporary restraining order.

FACTS

Baker Construction Enterprises, Inc. is a holding company for several subsidiaries in the concrete and construction industry. (Ver. Compl., Doc. 1, Pg. ID ¶ 11.) Plaintiff TWC Concrete LLC, a subsidiary of Baker Construction, ("TWC-Baker") was formed when Defendant Anthony DeCarlo, Jr. and his father sold the family business to Baker. (*Id.* ¶¶ 13-16.) As a part of the sale, TWC-Baker and DeCarlo entered into an Employment Agreement, where DeCarlo would serve as the Vice President of Operations for TWC-

---

[1] Plaintiff seeks both a temporary restraining order and preliminary injunction in its motion (Doc. 2). The Court will only address Plaintiff's prayer for a temporary restraining order. Following an evidentiary hearing, the Court will adjudicate the issue of a preliminary injunction.

Baker from January 1, 2020 through December 31, 2023. (*Id.* ¶ 25-26; Employment Agreement, Doc. 1-1, Pg. ID 39.) As Vice President of Operations, DeCarlo would perform duties "customarily incident" to the position, as well as "other duties, if any, as the Company's managing member, President, Chief Executive Officer, Chief Financial Officer or any person designated by any of the foregoing to have management authority over [DeCarlo] . . . may assign to or confer upon [DeCarlo] from time to time." (Employment Agreement, Doc. 1-1, Pg. ID 38.)

The Employment Agreement also contained (1) a Nonuse and Nondisclosure provision, (2) a Noncompetition provision, and (3) a Nonsolicitation provision. (*Id.* ¶ 30, 32, 36.) Of relevant note, the Nonuse and Nondisclosure provision disallowed DeCarlo from "keep[ing] or mak[ing] copies of any documents, records or property of any nature containing or reflecting any Confidential Information." (Employment Agreement, Doc. 1-1, Pg. ID 41.) The provision allowed DeCarlo to disclose Confidential Information so long as DeCarlo: "(i) provide[d] the Company with prior written notice of such disclosure so as to permit the Company to seek a protective order or other appropriate remedy, (ii) limit[ed] such disclosure to what is strictly required and (iii) attempt[ed] to preserve the confidentiality of any such Confidential Information so disclosed." (*Id.*)

During his tenure, DeCarlo oversaw TWC-Baker's projects for one of its primary customers, Old Dominion Freight Line, Inc. ("ODFL"), a national transport company. (Ver. Compl., Doc. 1, ¶ 44.) DeCarlo worked closely with ODFL management and signed two contracts with ODFL on behalf of TWC-Baker for two separate projects—the "Minnesota Project" and the "Des Plaines Project"—in August 2022. (*Id.* ¶ 44-45.) He also

worked closely with Damon Harrison and Timothy Brock, two forepersons at TWC-Baker. (*Id.* ¶ 56.)

The relationship between DeCarlo and TWC-Baker, and Baker Construction's founder Dan Baker, began to disintegrate in 2022. DeCarlo claims to have been "ostracized from [TWC-Baker's] business" in the spring of 2022 after Dan Baker stopped communicating with him. (DeCarlo Dec., Doc. 12-1, ¶ 56.) Also, some responsibilities of his "were moved to others and [he] was not included in important meetings or decisions" consistent with his role. (*Id.*) Then, on January 9, 2023, Baker Construction CEO Brad Wucherpfennig emailed TWC-Baker employees, stating that DeCarlo had "assumed new responsibilities within Baker." (Wucherpfennig Email, Doc. 1-2, Pg. ID 51.) Following this email, however, DeCarlo remained listed as the Vice President of Operations of TWC-Baker on TWC-Baker's Officer Register. (Farr. Dec., Doc. 16-10, Pg. ID 334-35.) He also continued to possess a TWC-Baker vehicle and other items, (DeCarlo Dec., Doc. 12-1, Pg. ID 181.), use a TWC-Baker email address, and identify himself as a TWC-Baker employee. (*See* Doc. 12-1, Pg. ID 252.)

As TWC-Baker and DeCarlo's relationship was plummeting, ODFL terminated the projects with TWC-Baker. (*Id.* ¶ 52.) Then, Harrison and Brock both resigned early May 2023. (*Id.* ¶ 56.) Perplexed, TWC-Baker began to investigate DeCarlo. (Ver. Compl., Doc. 1, ¶ 58.) As part of the investigation, TWC-Baker accessed DeCarlo's company email. (*Id.* ¶ 59.) This showed that DeCarlo was planning to start his own competing company, now known as Defendant Dominion Concrete Services, LLC. (*Id.* ¶¶ 60, 72.) DeCarlo was also forwarding identified Confidential Information from his TWC-Baker email to his

personal email. (*Id*. ¶ 63.) Relevant here, DeCarlo forwarded himself the 2022 Financial Statement on January 18, 2023, which contained "confidential budget information, a comprehensive list of TWC-Baker's customers, and information regarding project costs and expected profits." (*Id*. ¶ 66; Jan. 18, 2023 Email, Doc. 16-2, Pg. ID 290.)

TWC-Baker then officially terminated DeCarlo on June 6, 2023. (Ver. Compl., Doc. 1, ¶ 89.) Right after, TWC-Baker sued Defendants, alleging: breach of contract claims seeking injunctive relief and damages, misappropriation of trade secret claims in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq., seeking injunctive relief and damages; misappropriation of trade secret claims in violation of the Ohio Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code § 1333.61, et seq., seeking injunctive relief and damages; and a breach of fiduciary duties claim seeking damages. TWC-Baker also filed the instant motion.

## LAW & ANALYSIS

Federal Rule of Civil Procedure 65 empowers the Court to issue a temporary restraining order against an adverse party. Fed. R. Civ. P. 65(b). The purpose of issuing a temporary restraining order is to preserve the status quo. *CUC Properties, LLC v. 1680 Carillon, LLC*, No. 1:12-cv-71, 2012 WL 540560, *1 (S.D. Ohio Feb. 17, 2012). This Court must consider four factors when determining whether to grant or deny a temporary restraining order: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; (4) whether the public interest would be served by issuance of the injunction." *Id*. (citing *Chabad of S.*

*Oh. & Congregational Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004)).

"These are factors to be balanced, not prerequisites that must be met." *United States v.*

*Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004).

## I.    Likelihood of Success

TWC-Baker brings three claims seeking injunctive relief: (1) breach of contract, (2)

violations of the DTSA, and (3) violations of the OUTSA. Each are addressed below.

### a.  Breach of Contract

First, TWC-Baker claims that DeCarlo breached the Employment Agreement's

Noncompetition, Nonsolicitation, and Confidentiality provisions by creating and

working for Dominion, performing work for ODFL, soliciting former TWC-Baker

employees to jump ship, and forwarding multiple pieces of confidential and proprietary

information to his personal email. To establish a breach of contract claim under Ohio law,

a plaintiff must show that (1) a contract existed, (2) the plaintiff performed its obligations

under the contract, (3) the defendant breached the contract, and (4) the plaintiff suffered

damages. *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006).

"Under Ohio law, a non-compete clause will not be enforced if the company

seeking enforcement previously breached a material provision of the contract containing

the covenant not to compete." *MyVitaNet.com v. Kowlaski*, No., 2019 WL 203008 (S.D. Ohio

Jan 22, 2008). A material breach occurs when a party fails to perform an element "so

fundamental" to the contract that such failure "defeats the essential purpose of the

contract or makes it impossible for the other party to perform." *Kehoe Component Sales Inc.*

*v. Best Lighting Products, Inc.*, 933 F. Supp. 2d 974, 1005 (S.D. Ohio 2013).

Defendants argue that TWC-Baker cannot show a likelihood of success on its breach of contract claim because TWC-Baker materially breached the Employment Agreement before DeCarlo's alleged breach.[2] Defendants point to two time periods when TWC-Baker allegedly breached first: (1) Spring 2022 and (2) January 2023.

### i. Spring 2022

Defendants claim that DeCarlo was constructively discharged in the spring of 2022, which constitutes a material breach of the Employment Agreement. Constructive discharge occurs when an employer makes an employee's working conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Keller v. Allstate Ins. Co.*, 146 F. Appx. 764, 765 (6th 2005). Courts consider the following to determine if an employee was constructively discharged:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a [younger] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id.* (quoting *Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001)).

Based on the current record, it is unclear what exactly occurred in the spring of 2022. Defendants seem to rely on a single paragraph contained within DeCarlo's

---

[2] Defendants also argue that issuing a temporary restraining order is premature before the parties conduct discovery. But many courts across the Sixth Circuit, including this Court, have issued temporary restraining orders because of alleged breaches of non-competes before the parties conduct discovery. *Total Quality Logistics, LLC v. OTC Logistics, LLC*, No., 2019 WL 1300223 (S.D. Ohio Mar. 21, 2019); *AK Steel Corp. v. Miskovich*, No. 1:14cv174, 2014 WL 11881030 (S.D. Ohio Mar. 3, 2014); *Edwards Moving & Rigging, Inc. v. Lack*, No. 2014 WL 12531102 (W.D. Tenn. Mar. 5, 2014). Thus, the Court is unpersuaded by Defendants' argument.

Declaration, where he states that Dan Baker stopped communicating with him and he became "ostracized from [TWC-Baker's] business." (DeCarlo Dec., Doc. 12-1, ¶ 56.) He also states that his previous responsibilities "were moved to others and [he] was not included in important meetings or decisions" consistent with his role. (*Id.*) However, alleged reduction in job responsibilities, without more, is not enough for a finding of constructive discharge or a material breach by TWC-Baker. TWC-Baker did not materially breach the Employment Agreement in the spring of 2022.

### ii. January 2023

Defendants also claim that DeCarlo was terminated in January of 2023, resulting in a material breach of the Employment Agreement. On January 9, 2023, DeCarlo "assumed new responsibilities within Baker." (Wucherpfennig Email, Doc. 1-2, Pg. ID 51.) The Court finds that, based on the record before it, DeCarlo's assumption of new responsibilities did not equal termination.

First, the Employment Agreement provides that DeCarlo was to perform, among his duties as Vice President of Operations, any duties "the Company's managing member, . . . or any person designated by any of the foregoing to have management authority over [DeCarlo] . . . may assign to or confer upon [DeCarlo.]" (Employment Agreement, Doc. 1-1, Pg. ID 38.) Thus, assuming new responsibilities within Baker Construction did not violate the Employment Agreement nor operated as termination from TWC-Baker.

DeCarlo remained listed as the Vice President of Operations of TWC-Baker on TWC-Baker's Officer Register until his termination of June 6, 2023. (Farr. Dec., Doc. 16-

10, Pg. ID 334-35.) He continued to possess a TWC-Baker vehicle and other items until June 6, 2023. (DeCarlo Dec., Doc. 12-1, Pg. ID 181.) And he continued to use a TWC-Baker email address and identify himself as a TWC-Baker employee. (*See* Doc. 12-1, Pg. ID 252.) Based on the evidence before the Court, TWC-Baker materially breached the Employment Agreement in January 2023.

Therefore, at this preliminary stage, the Court finds that TWC-Baker has established a likelihood of success on the merits of its breach of contract claim for purposes of a temporary restraining order.

### b. Misappropriation of Trade Secrets

Next, we turn to TWC's misappropriation of trade secrets claims. "Because the definition and requirements of both the DTSA and OUSTA are essentially the same, the Court will consider these federal and state law claims together." *Mech. Constr. Managers, LLC v. Paschka*, No., 2022 WL 1591605, at *9 (S.D. Ohio May 19, 2022). TWC-Baker established that it is likely to succeed on its misappropriation of trade secrets claims.

To establish a likelihood of success on the misappropriation of trade secrets claims, a plaintiff must show: "(1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret."[3] *Heartland Home Fin., Inc. v. Allied Home Mortg. Cap. Corp.*, 258 F. Appx. 860, 861 (6th Cir. 2008). A trade secret is defined by each statute as "information" that (1) "derives

---

[3] The DTSA also requires "that the trade secret is related to a product or service used in interstate or foreign commerce." *Noco Co. v. CTEK*, Inc., No. 1:19 CV 00853 DCN, 2020 WL 821485, at *6 (N.D. Ohio Feb. 18, 2020). That said, Defendants do not contest that the trade secrets in question relates to services used in interstate commerce.

independent economic value" from not being generally known or readily ascertained by competitors and (2) the owner of the information undergoes reasonable efforts to maintain the information's secrecy. 18 U.S.C. § 1839(3)(A)-(B); Ohio Rev. Code § 1333.61(D). Ohio Rev. Code § 1333.62(A).

At a minimum, the 2022 Financial Statement constitutes a trade secret under both federal and state law. The Financial Statement included confidential budget information, a list of all TWC-Baker jobs from 2022, customer names, contract values, and estimated costs for the contracts. (Ver. Compl., Doc. 1, ¶ 66.) Such information derives independent economic value from not being generally known or readily ascertained by competitors. The Financial Statement was also the subject of reasonable efforts to maintain its secrecy, as it was only distributed to thirteen people within TWC. (*Id.*) Also, to have access to the Financial Statement, all thirteen individuals had to sign confidentiality agreements. (*Id.*) Thus, the 2022 Financial Statement alone constitutes a trade secret.

Next, DeCarlo acquired the 2022 Financial Statement as a result of his confidential relationship. DeCarlo's Employment Agreement included a Nonuse and Nondisclosure provision. (Ver. Compl., Doc. 1, ¶ 30; Employment Agreement, Doc. 1-1, Pg. ID 41.) Such provision disallowed DeCarlo from keeping or making copies of "any documents, records or property of any nature containing or reflecting Confidential Information[.]" (Employment Agreement, Doc. 1-1, Pg. ID 41.) The 2022 Financial Statement falls within the Employment Agreement's definition of Confidential Information. (*Id.* ¶ 31.) And DeCarlo only had access to the 2022 Financial Statement due to his employment as an executive of TWC. (*See id.* ¶ 66.)

Lastly, DeCarlo's use of the 2022 Financial Statement has been unauthorized. Again, the Nonuse and Nondisclosure provision of the Employment Agreement states that DeCarlo, while employed by TWC-Baker, shall not "keep or make copies of any documents, records or property of any nature containing or reflecting any Confidential Information." (Employment Agreement, Doc. 1-1, Pg. ID 41.) The provision continues, stating that:

> Employee may disclose Confidential Information at such times, in such manner and to the extent such disclosure is required by applicable law, provided that Employee (i) provides the Company with prior written notice of such disclosure so as to permit the Company to seek a protective order or other appropriate remedy, (ii) limits such disclosure to what is strictly required and (iii) attempts to preserve the confidentiality of any such Confidential Information so disclosed.

(*Id.*)

Rather than following this procedure, DeCarlo, without authorization, forwarded the Financial Statement to his personal email. (Ver. Compl., Doc. 1, ¶ 66; Jan. 18, 2023 Email, Doc. 16-2, Pg. ID 290.) Such conduct violated the Nonuse and Nondisclosure provision. And other courts applying Ohio law have determined that forwarding confidential information to one's personal email in violation of an employment agreement constitutes the unauthorized use of a trade secret. *Shepard and Assoc., Inc. v. Lokring Tech., LLC*, No. 1:20-CV-2488, 2022 WL 312711, at *24-25 (N.D. Ohio Feb. 2, 2022). Thus, for purposes of a temporary restraining order, the Court finds that DeCarlo's use of the 2022 Financial Statement was unauthorized. Therefore, TWC-Baker has established a likelihood of success on the merits of its misappropriation of trade secrets claims at this stage.

10

## II.     Irreparable Harm

Plaintiff has also established irreparable harm for purposes of a temporary restraining order. Irreparable harm is generally required to warrant injunctive relief. *Kendall Holdings, Ltd. v. Eden Crogenics LLC*, 630 F. Supp. 2d, 853, 867 (S.D. Ohio 2008). Harm is irreparable if not fully compensable by monetary damages. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). An injury is not fully compensable by monetary damages if the nature of a plaintiff's loss would make damages difficult to calculate. *Basicomputer Corp. v. Scott*, 973 F.3d 507, 511 (6th Cir. 1992).

First, loss of customer goodwill and fair competition because of a breach of noncompete provisions has been found to constitute irreparable harm. *Basicomputer Corp.*, 973 F.2d at 512. Additionally, "[t]he loss of trade secrets is usually considered irreparable harm that cannot be measured by monetary damages." *Kendall Holdings*, 630 F. Supp. 2d at 867. Irreparable harm is presumed when it is shown that a defendant misappropriated trade secrets. *Id.* As explained above, Plaintiff established a likelihood of success on the merits of its DTSA and OUTSA claims. Thus, irreparable harm is presumed. Defendants failed to overcome that presumption. TWC-Baker has established that it will suffer irreparable harm without a temporary restraining order.

## III.     Remaining Factors

The third and fourth factor weigh in favor of a temporary restraining order. First, any harm Defendants may allegedly suffer is due to Defendants' alleged conduct. This Court has held that self-inflicted harm to a Defendant does not preclude injunctive relief. *Cooey v. Taft*, 230 F. Supp. 2d 702, 708 (S.D. Ohio 2006). Additionally, nothing in the record

suggests, nor does Defendant argue, that enforcing the Employment Agreement would cause substantial harms to any third parties. *See Certified Restoration Dry Cleaning Network, LLC*, 551 F.3d at 551. Also, "[t]he public interest is always served in the enforcement of valid restrictive covenants contained in lawful contracts." *Handel's Enter., Inc. v. Shulenburg*, 765 F. Appx. 117, 125 (6th Cir. 2019). And this Court has recognized that OUTSA "embodies a public interest in maintaining the standards of commercial ethics as well as the protection of the substantial investment of employers in their proprietary information." *Kendall Holdings*, 630 F. Supp. 2d at 869. Thus, substantial harm will not be caused to others and the public interest will be served by issuing a temporary restraining order.

## CONCLUSION

Thus, the Court **GRANTS** Plaintiff's Motion for a Temporary Restraining Order (Doc. 2) and **ORDERS** the following:

1. DeCarlo, individually and/or through Dominion, is **ENJOINED** from violating the Noncompetition, Nonsolicitation, and Confidentiality Provisions of his Employment Agreement.

2. Defendants are **ENJOINED** from misappropriating TWC-Baker's trade secrets.

3. Defendants **MUST PRESERVE** all documents and information potentially relevant here.

4. The Court will schedule a preliminary injunction hearing by separate entry.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND